```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

        -against-                        MEMORANDUM & ORDER
                                         03-CV-4990(JS)(ARL)
FIRST WIRELESS GROUP, INC.,

                Defendant,

-------------------------------X
```
Appearances:
For Plaintiff:      Michelle A. Caiola, Esq.
                    Lauren G. Dreilinger, Esq.
                    Katherine E. Bissell, Esq.
                    Estela Diaz, Esq.
                    Elizabeth Ann Grossman, Esq.
                    Adela P. Santos, Esq.
                    U.S. Equal Employment Opportunity Commission
                    33 Whitehall Street, 5th Floor
                    New York, New York 10004-2112

For Intervener
Plaintiffs:         Delvis Melendez, Esq.
                    90 Bradley Street
                    Brentwood, New York 11717

For Defendant:      Douglas H. Wigdor, Esq.
                    Thompson Wigdor & Gilly LLP
                    350 Fifth Avenue, Suite 5720
                    New York, New York 10118

SEYBERT, District Judge:

## **INTRODUCTION**

Pending before the Court are two motions brought by First Wireless Group, Inc., ("Defendant"). Defendant moves to

set aside Magistrate Judge Arlene R. Lindsay's Orders, dated June 22, 2006 ("June 2006 Order") and August 10, 2006 ("August 2006 Order"). Defendant claims that the Magistrate's Orders are erroneous and contrary to law. For the reasons below, the Court DENIES Defendant's motions.

## BACKGROUND

Certain Hispanic employees, who later intervened as Plaintiffs in this case ("Plaintiff-Interveners") filed a timely charge of discrimination with the Suffolk County Commission of Human Rights. On August 19, 2002, this case was transferred to the Equal Employment Opportunity Commission ("EEOC"). On September 30, 2003, the EEOC brought a civil action pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 against the Defendant. On September 30, 2003, the EEOC filed a Complaint with this Court, claiming Defendant discriminated and retaliated against a group of Hispanics ("Claimants") that it employed. EEOC specifically alleged that Hispanic employees who worked the evening shift for Defendant were paid less than similarly situated Asian employees. (See Complaint ("Compl.") ¶ 7.)

EEOC also alleged that Defendant retaliated against the Hispanic employees in the following instances. First, Defendant

fired shift manager, Dilber Jimenez, for complaining about wage disparity.  Second, Defendant fired Rosa Garcia and Adrianna Torres for circulating a petition that protested the wage disparity.  Third, Defendant pressured the Hispanic employees that signed the petition to recant their signatures, and fourth, Defendant ultimately terminated those employees.  (Id.)

On July 13, 2005, the Plaintiff-Interveners filed an Amended Complaint.  The Plaintiff-Interveners alleged essentially the same acts of discrimination and retaliation that the EEOC alleged.  (Amended Complaint ¶¶ 17-41.)

In 2004, the parties commenced discovery, and on June 15, 2004, Magistrate Judge Arlene R. Lindsay issued a Protective Order ("Protective Order").  This Court upheld the Protective Order.  See EEOC v. First Wireless Group, Inc., 03-CV-4990, 2004 U.S. Dist. LEXIS 24089, at *8-*9 (E.D.N.Y. Nov. 19, 2004).

During discovery in 2006, Defendant sought to compel Claimants to respond to certain deposition questions concerning the countries of their origin and the accuracy of the information contained in their employment application and their W-4.  In the June 2006 Order, the Magistrate issued a ruling that Defendant could ask the Claimants where they were born, whether they filed tax returns, and whether Claimants had made false statements.

3

Claimants did not need to respond, however, to questions regarding the accuracy of the social security numbers provided in their employment applications. (Id. at 2.) Defendant moves to set aside this portion of the June 2006 Order.

In July 2006, Defendant sought independent psychological examinations of certain Claimants pursuant to Federal Rule 35(a). Defendant argues a Rule 35 examination is necessary because some of the Claimants alleged and testified to serious emotional damages. The Magistrate denied the request in the August 2006 Order, claiming that the damages were mere "garden variety" damages, not warranting a Rule 35 examination. Further, the EEOC was willing to stipulate to seek only "garden variety" damages on the emotional distress claims. Defendant moves to set aside the entire August 2006 Order.

## **LEGAL STANDARD**

Rule 72 provides in pertinent part the following:

> A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall

4

> modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed. R. Civ. P. 72(a).

This Court may set aside a portion of Magistrate Judge Lindsay's orders concerning non-dispositive matters if the order is "clearly erroneous or contrary to law." Id. An order is "clearly erroneous only when the reviewing court[, based] on the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." Weiss v. La Suisse, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001). An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id.

Discovery matters are generally considered non-dispositive and thus governed by Rule 72(a). See id. "A magistrate judge's resolution of discovery disputes deserves substantial deference" and is overruled only if the Magistrate has abused its discretion. Id.; see EEOC v. First Wireless, 2004 U.S. Dist. LEXIS 24089, at *3.

## DISCUSSION

I. <u>This Court DENIES Defendant's Motion To Set Aside The June 2006 Order</u>.

The June 2006 Order precluded the Defendant from inquiring into the accuracy of Claimants' social security numbers

5

provided to the Defendant during the hiring process.  Defendant argues this portion of the June 2006 Order was clearly erroneous and contrary to law.  Defendant claims that its inquiry as to the veracity of the social security numbers obtained during the hiring process concerns Claimants' credibility and not their immigration status.

On June 13, 2006, Defendant sought "to compel the Claimants to respond to certain deposition questions concerning the countries of their origin and the accuracy of the information contained in their employment application and their W-4." (June 2006 Order 1.)  The Defendant also requested that the Magistrate reconsider the Protective Order, barring discovery into Claimants' immigration status.  In the June 2006 Order, Magistrate Judge Lindsay held that "[D]efendant's attempt to learn whether [P]laintiffs used false [social security numbers] is nothing more than a back door attempt to shed light on their immigration status and thereby avoid the court's [Protective Order.]" (Id. at 2.)  The Protective Order intended "to protect the Plaintiffs from the in terrorem effect of discovery requests aimed at learning their immigration status." (Id.)

> A. Relevance Of Immigration Status And Information Sought By Defendant To Attack Claimants' Credibility

In upholding the Protective Order, this Court held that

> There is no evidence in the record which shows that the Defendant had inquired into the Charging Parties' immigration status <u>at the time of hiring</u> and no evidence pointing to Defendant's lack of knowledge with respect the Charging Parties' alleged illegal immigration status. Therefore, it was proper for Judge Lindsay to preclude the Defendant from discovery of the Charging Parties' immigration status because the Defendant cannot "ignore immigration laws at the time of hiring but insist upon their enforcement when [its] employees complain."

<u>EEOC v. First Wireless</u>, 2004 U.S. Dist. LEXIS 24089, at *8-*9, (<u>quoting</u> <u>Rivera v. Nibco, Inc.</u>, 364 F.3d 1057, 1072 (9th Cir. 2004), <u>cert. denied</u>, 544 U.S. 905, 125 S. Ct. 1603, 161 L. Ed. 2d 279 (2005)) (emphasis added).

Defendant argues that the Claimants' alleged use of false social security numbers is relevant to the Claimants' credibility, given Defendant's compliance with I-9 obligations. Defendant claims it "has always complied with the I-9 employment verification process." (Wigdor Affirm ¶ 3.) Further, only after this action commenced did Defendant develop "a good faith basis to believe that many of the documents furnished by the Claimants to satisfy their I-9 obligations were stolen, forged or altered." (<u>Id.</u> at ¶ 4.) Because Defendant's discovery request is more probative of the Claimants' credibility and character, it does not violate the Protective Order barring discovery of the Claimants' immigration status.

7

This Court disagrees. The Protective Order intended to protect the Claimants' immigration status due to the in terrorem effect such inquiry would have. Immigration status discovery in cases where plaintiffs are possibly undocumented is a very sensitive area of inquiry. In some cases, such information is not relevant because a claimant is continually employed or it was the employer who failed to comply with immigration laws. In most cases, however, the in terrorem effect of the proposed inquiry outweighs the probative value of the discovery.

Discovery of immigration status - while relevant to damages in an employment discrimination action - is a potential weapon for harassing and intimidating individuals. See Rivera, 364 F.3d at 1065 ("Granting employers the right to inquire into workers' immigration status . . . would allow them to raise implicitly the threat of deportation and criminal prosecution every time a worker, documented or undocumented, reports illegal practices or files a Title VII action."); see also Rivera v. Nibco, Inc., 99-CV-6643, 2001 U.S. Dist. LEXIS 8335, at *14 (E.D. Cal. June 18, 2001) ("Unlike employees who have committed application fraud or engaged in wrongdoing while employed, . . . undocumented employees face a much more serious ramification from

background discovery--possible deportment and criminal prosecution.").

Defendant proposes that its inquiry into whether Claimants provided false information on their employment application documents is beyond the scope of the Protective Order relating to the parties' immigration status. (Def.'s Mem. 8.) Defendant cites EEOC v. Bice of Chicago, 04-CV-2708, 2005 U.S. Dist. LEXIS 15959 (N.D. Ill. July 18, 2005). The Bice court granted EEOC's motion for a protective order relating to the charging parties' immigration status. In doing so, the Bice court held that "[d]efendants can inquire about whether aliases of false names were used and whether a party falsified his or her identity in order to attack a deponent's credibility." Bice, 2005 U.S. Dist. LEXIS 15959, at *3. That court further found that "[t]here is no need to delve into why the deponent engaged in such untruthful conduct." Id.

The Court rejects this argument. The Magistrate appropriately ruled that Defendant can inquire as to the Claimants' country of birth. To attack the Claimants' credibility and establish that Claimants are dishonest, Defendant can ask about any tax returns Claimants filed and whether such tax returns contained false information. But the Magistrate also

specifically found that asking if Claimants provided false social security numbers was just another way to find out if Claimants were illegally residing in this country. The Magistrate stated that "a person who may be illegally in this country is likely to use a false SSN to obtain employment." (June 2006 Order 2.) Therefore, even if <u>Bice</u> controlled - which this Court does not find, Defendant can still impeach Claimants through means other than false social security numbers, i.e., false names. These other ways need not relate to the Claimants' immigration status or social security numbers.

      The <u>Avila-Blum</u> case dealt with analogous facts and legal issues as presented in the case at bar. <u>See</u> <u>Avila-Blum</u>, 2006 U.S. Dist. LEXIS 30195. The <u>Avila-Blum</u> court held, "a witness's credibility is always at issue and may be tested in a variety of ways without imposing undue burden on a party." <u>Id.</u> at *6 (citation omitted). That court concluded that if a defendant had a good faith belief or evidence indicating a plaintiff falsified employment records, a "properly limited and narrowly tailored examination in deposition and at trial may be permissible without opening broader collateral issues pertaining to . . . immigration status." <u>Id.</u>

The Court finds <u>Avila-Blum</u> dispositive. Asking Claimants whether they provided accurate social security numbers on their applications is not sufficiently narrow as to avoid the collateral issues relating to Claimants' immigration status. Any line of questioning concerning Claimants' employment applications and W-4 forms must be limited in a way that would avoid implicating Claimants' immigration status and sufficiently serve Defendant's need to test Claimants' credibility. The I-9 Employment Eligibility Verification form and the W-4 form, which are the focus of Defendant's line of questioning, require the disclosure of the applicant's name, address, date of birth, and social security number. If Defendant seeks to attack Claimants' credibility, they may do so by establishing that Claimants falsified any of the information contained in those forms without additional inquiry concerning Claimants' social security numbers.

B. <u>Reconsideration Of The Magistrate's Protective Order For Purpose Of Determining Damages</u>

Defendant requests that this Court revisit its prior order upholding the Magistrate's Protective Order. Defendant argues that the Claimants' immigration status may have contributed to their emotional distress damages. For this reason, Defendant asks that the Court lift the Protective Order

and allow Defendant to delve into the immigration status of Claimants.

The Court is not persuaded. Magistrate Judge Lindsay's June 2006 Order held that it "does not believe that the reconsideration of its prior order regarding immigration status discovery is warranted based on the fact that the Claimants are seeking recovery for economic damages." Nothing in that finding is clearly erroneous or contrary to law, and as such, it is clearly within the proper exercise of the magistrate's discretion.

Further, the Court finds that at this time, the potential harm to Claimants still outweighs any interest in finding out Claimants' immigration status - especially at the liability stage of the litigation. This information, however, may become relevant at subsequent stages of litigation, i.e., determination of damages. See Avila-Blum v. Casa De Cambio Delgado, Inc., 05-CV-6435, 2006 U.S. Dist. LEXIS 30195, at *5 (S.D.N.Y. May 16, 2006) (finding that the relevance and probative value of a plaintiff's immigration status is "questionable at best, at least at the liability stage"); Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) ("If it appears at some later juncture that such discovery would be

relevant, and more relevant than harmful, [defendant] may seek leave to renew this request."); Rivera, 364 F.3d at 1064 ("[T]he protective order was justified because the substantial and particularized harm of the discovery -- the chilling effect that the disclosure of plaintiffs' immigration status could have upon their ability to effectuate their rights -- outweighed [defendant's] interests in obtaining the information at this early stage in the litigation.").

Based on the reasons above, the Court DENIES Defendant's motion to set aside the Magistrate's June 2006 Order.

II. The Court DENIES Defendant's Motion To Set Aside Magistrate Judge Lindsay's August 2006, Order.

Defendant's second motion concerns Magistrate Judge Lindsay's August 2006 Order. On July 25, 2006, Defendant sought "to compel the charging parties and the additional Claimants to submit to independent psychological examinations pursuant to Fed. R. Civ. P. 25(a)." (August 2006 Order 1.) Magistrate Judge Lindsay found that the "charging parties and additional Claimants have not placed their mental condition in controversy so as to warrant psychiatric examinations." (Id. at 3.)

The Magistrate based her finding in part on the review of Claimants' deposition testimony. "A review of the [deposition

13

testimony] . . . suggests the claims are exactly the 'garden variety' claims alleged by the EEOC in its opposition. The eight Claimants only allege typical symptoms such as depression, weight loss, headaches, lack of appetite, sleep loss, loss of trust, and disorientation." (Id. at 2-3.) The Magistrate further noted that the EEOC would limit their claims of emotional distress to past emotional suffering. The Magistrate also pointed out that the EEOC would be willing to stipulate that the Claimants' claims would be limited to "garden variety" emotional distress damages and no expert testimony would be proffered in support of emotional damages. (Id. at 3.)

Defendant claims that certain of Claimants' allegations exceed typical claims of emotional distress. Defendant argues that the "Magistrate . . . improperly concluded that the Claimants are alleging only 'typical' garden-variety symptoms to hold that the Claimants "have not placed their mental condition in controversy so as to warrant psychiatric examinations.""  (Def.'s Mem. 8-9).

    A.   <u>"Garden Variety" Emotional Distress Claims</u>

"A 'garden variety' emotional distress claim is one that d[oes] not require medical treatment." <u>Epstein v. Kalvin-</u>

Miller Int'l, 139 F. Supp. 2d 469, 480 (S.D.N.Y. 2001). Garden variety emotional distress is defined as "ordinary and commonplace emotional distress . . . . In contrast, emotional distress that is not garden-variety may be complex, such as resulting in a specific psychiatric disorder, or may be unusual, such as to disable one from working." Ruhlmann v. Ulster Co. Dep't of Soc. Servs., 99-CV-213, 2000 U.S. Dist. LEXIS 9390, at *13, n.6 (N.D.N.Y. July 6, 2000). Courts limit the amount of damage in cases involving garden variety emotional distress claims.

> At the low end of the continuum are what have become known as "garden-variety" distress claims in which district courts have awarded damages for emotional distress ranging from $5,000 to $35,000. "Garden-variety" remitted awards have typically been rendered in cases where the evidence of harm was presented primarily through the testimony of the plaintiff, who describes his or her distress in vague or conclusory terms and fails to describe the severity or consequences of the injury.

Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y., 2005) (quoting Michelle Cucuzza, Evaluating Emotional Distress Damage Awards To Promote Settlement Of Employment Discrimination Claims In The Second Circuit, 65 BROOK. L. REV. 393, 427-28 (1999)).

A plaintiff does not place his or her mental condition in issue, warranting a Rule 35(a) examination by "garden variety

claims of emotional distress." Ruhlmann, 2000 U.S. Dist. LEXIS 9390, at *18. Merely making a claim for physical or emotional distress - as opposed to a claim of a psychiatric disorder requiring psychiatric or psychological counseling - does not warrant a Rule 35(a) examination. See Cody v. Marriott Corp. 83-CV-2603, 1984 U.S. Dist. LEXIS 22016, at *4, *6 (D. Mass. Nov 14, 1984). On the other hand, claims of severe depression, use of antidepressants, attempts at suicide, and psychiatric treatment do warrant a Rule 35(a) examination. See EEOC v. Grief Bros. Corp., 02-CV-468S, 2003 U.S. Dist. LEXIS 18351, at *8 (W.D.N.Y. Aug 28, 2003).

A review of deposition testimony reveals the following: Claimant Fuentes deposed that he suffered from depression (Fuentes Dep. 141-143); Claimant Barahona deposed that she "had more and more headaches and [she] would get like a burning in [her] eyes as a result of the headaches." (Barahona Dep. 113); Claimant Arzayus deposed that she sought medical attention following her termination (Arzayus Dep. 114-116, 119-120); Claimant Araujo testified that she was receiving psychological treatment and medication (Araujo Dep. 9, 120); Claimant Romero consulted her doctor concerning her "nerves." (Romero Dep. 16);

16

Claimant Garcia would "start crying every once in a while," and suffers from loss of sleep (Garcia Dep. 128-129); Claimant Jiminez deposed that "[i]f [he] had the money [he] would have" seen a psychologist or a psychiatrist (Jiminez Dep. 157, 181). Claimant Naranjo deposed that he felt that he needed to see a doctor as a result of his emotional problems (Naranjo Dep. 136-137); Claimant Alvarez deposed that she did not see a psychologist "because [she] didn't have money to see a psychologist." (Alvarez Dep. 129).

None of the testimony seem to involve complex psychiatric disorders or require psychological counseling. Teary eyes, loss of sleep, and a desire for counseling do not disable people from working. Further, the EEOC is willing to stipulate to seeking recovery limited to garden-variety claims. In light of this, the Court DENIES Defendant's motion for Rule 35 examinations.

**CONCLUSION**

The Court DENIES Defendant's motions to set aside the Magistrate's June 2006 and August 2006 Orders. The Court DENIES Defendant's application for Rule 35 examinations.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         February 20, 2007